Good morning, Your Honors. John McCurley appearing on behalf of Petitioner Jarvis Gilbert. And as with everybody else, you've got to move that mic up. The sound doesn't carry here very far. Is this good? That's better. Just speak as if there was no mic there. Just right out. I'll do my best. It won't be too loud. Your Honors, this is a case primarily about ineffective assistance of counsel. However, all of the instances of ineffective assistance can be traced back to actions of the prosecutor during trial. The district court denied petitioner relief based solely on there being no prejudice. If you look at the court of appeal decision, there was other basis for their denial of relief, but they also relied on there not being prejudice. Sounds like a good place for you to start your argument. Yeah, exactly. And I think in this case, both courts overstated the strength of the prosecution's evidence. And in this case, essentially, the only evidence, there was no direct evidence tying the petitioner to the shooting, no physical evidence. Really, the only evidence was an identification by a 13-year-old juvenile L.R. And there are some significant problems with this identification. If you read through the transcripts, at some point she points out that it was her uncle who told her that the petitioner was the shooter. She later recanted. She admitted that on the night of the shooting, the shooting was at 1 o'clock in the morning, that she was not wearing her prescription glasses, that she required to see well. She had drank an alcohol that night. She had smoked marijuana. She had used ecstasy. All these different factors. And like I said, it's a 13-year-old witness, no other physical evidence that the petitioner was the shooter in this case. And both the courts, the Court of Appeal and the District Court, rely heavily on this identification as being reliable evidence that the petitioner committed the offense. And that played a big part in both courts' decisions to deny petitioner relief for ineffective assistance of counsel. The problem I have with your case is you're arguing it as if it was a direct appeal. And it isn't. This is the habeas round. And in order for you to be successful here, you have to show that it was the Court of Appeal, the last decision, made a decision which is unreasonable application of Supreme Court law when it rejected this failure to object to claims or the evidence that came in. These are usually things that are done at the trial, the direct appeal of the trial. By the time you get to here, that's over. You have to show that they violated the Constitution in the ruling. And I don't see where in your argument so far that you've shown that. You've shown the problems that would have been on direct appeal to the California system. But now why is it a violation of the Federal law as defined by the Supreme Court? Where is the unconstitutionality? I think the unconstitutionality lies, first off, in regard to the courts. The unconstitutionality lies in counsel's failure to object in these various cases resulted in my client not receiving a fair trial. And he has, under the U.S. Constitution, has a right to a fair trial, effective assistance of counsel. And I don't believe that the court of appeal, their decision, is reasonable interpretation of the facts. The … Why? Because if you look at the conduct of the prosecutor, it was so outrageous. There were so many instances where the prosecutor went further than they're ethically allowed to go. And also, like I said, the evidence against the petitioner was very weak in this case. It was just that one identification. And that identification had a lot of problems with it. You know, for instance, the prosecutor had another prosecutor testify at trial, the prosecutor who had actually done the preliminary hearing. And the prosecutor vouched for three of the witnesses as to their credibility. The prosecutor went on to – I think they call it – whenever he was – he talked about the Chinese mafia and the gangs. And somehow was trying to tie in this argument that there was a feeling of intimidation and fear in the courtroom. Trying to place that burden on the jury, which in effect distracted the jury from the facts of the case, whether the petitioner was actually guilty. Right. So Judge Henderson says, well, all right, we assume the errors.  We agree, for the sake of argument, that constitutional error has been committed. But he concludes with the state court that it's harmless because the errors didn't have anything to do with the substantive evidence presented. Yeah. And I recognize that argument. But if you look at the things that the prosecutor did and the prosecutor said, you know, for instance, vouching for witnesses, you know, there's a long line of case law that says what – you know, the problem with that. And what it is is the prosecutor, you know, puts the – uses the prestige and prominence of the district attorney's office to sort of sway the jury and places, you know, their judgment in the place of the jury's judgment of the credibility of the witnesses. And also, if you look at the things that he said in closing, if you look at, you know, trying to imply – Right, but both Judge Henderson and the state court said, well, okay – well, Judge Henderson in particular just says, all right, we'll accept that those are errors, but there's – it didn't have an effect on the verdict. Yeah. And I disagree with – Why – I think it's an – that's an unreasonable interpretation of the facts because the case was so close, it was just this one identification, not a good identification, lots of problems with it, and such outrageous conduct by the district attorney. You know, and the thing is, is I – What did the – what did the California – this is a California case, right? Yes. And what did the California appellate court say about the arguments that you made? Some of the arguments, the court said that it was not an effective assistance to counsel, that the trial counsel didn't object, and then some of the arguments they recognized as problematic. For instance, in closing, the prosecutor argued that – because the witness in the beginning, according to the prosecutor, you know, identified the petitioner, and as time went on, her story got less and less reliable, according to the prosecutor. So the prosecutor argued in closing that she had some sort of battered woman syndrome, and no expert witness was presented. You know, there was – So at any rate, the court of appeal affirmed the decision and gave a reasoned decision. Then it went back and started the habeas, right? Right. And then the court of appeal got the habeas case, and at that time they said there was no violation of the Constitution. Yes. And the problem with – on the direct appeal – I haven't asked my question yet. Oh, sorry. So we got to that place. Now you have to show us – we ordinarily have to defer to the State court's decision unless the application of the Supreme Court precedent of the United States was objectively unreasonable. Now, where was it objectionably unreasonable? Not back whether they should have sustained objections, the rest of it. That's – we're beyond that. It's whether or not the court of appeal of the State of California, in its determinations, was objectively unreasonable in its application of the United States Supreme Court cases. How would you argue that point to us? As far as citing U.S. Supreme Court cases, I would have to defer to what's in our briefs. The way I see it as unreasonable is based on their determination that all these different instances of misconduct by the prosecutor and the attorneys, the trial attorney's failure to object, there isn't a reasonable probability that that affected the outcome of the trial. I think that it's clear that in a case that's so close, such as this, you know, such gross misconduct more than meets that burden. And I think the court's – the appellate court's decision in that respect was unreasonable beyond a doubt. Okay. I think we have your argument in hand. Do you want to save some time for rebuttal? Sure. Okay. We have about three-and-a-half minutes. May it please the Court. Arthur Beaver for the Warden. As we explained in our briefs, the State court reasonably determined the facts and reasonably applied the Supreme Court law. Could you move into the mic, would you please? No problem. As we explained in the brief, the State court reasonably determined the facts and reasonably applied United States Supreme Court precedent that there is really no basis to overturn that decision under the AADPA. It's owed deference. That's what the district court found. If the court has any particular issue that it's concerned with, I'd be happy to answer questions on any of the appellant's claims. So what is the last reasoned decision of the California State court on habeas? The last reasoned decision is none. It was a summary denial of the State habeas petition. And to my knowledge, he did not – the appellant did not appeal that decision to the California Supreme Court. No, I've got a denial here. It's a summary denial. It's a postcard denial. Unreasoned, yes. However, as in that case, when he raised a claim of ineffective assistance of counsel and he's entitled to bring additional evidence on the State habeas proceedings, he did not. He does not bring any new evidence demonstrating ineffective assistance of counsel here. That's one of the reasons why we argue that the district court did not err by denying an evidentiary hearing. Which court rendered that decision, the summary denial? The California court of appeal, the same court that heard his direct appeal. So was the trial – California trial court hearing the habeas case, did they write it, anything? I'm not aware of whether or not the trial court heard. Right. I mean, we just don't have a reasoned decision on the habeas in State court. That would be our – appear to be correct. So on habeas, we're at de novo, don't we? Yes. There's no deference owed when there's no reasoned State court decision, although if the State court denial was reasonable, then it is owed some deference. Right. And I understand that on direct appeal, the California court of appeal addressed some of these issues. Correct. I understand that. But on habeas, we just don't have anything. There's no reasoned opinion, correct. So when you said he didn't tender any evidence in State court, did he file a habeas petition before a superior court? As I mentioned earlier, I'm not aware of whether or not he filed a State habeas petition. I'm sure that it's mentioned somewhere in the statement of the case if he did. But as he did in the district court, the only allegations that he raises, new allegations, things outside the record, are simply just asserting that counsel had no tactical decision – no tactical reason to fail to object to the various instances of alleged misconduct. But we don't have an affidavit from counsel. Correct. Or any deposition or any evidence at all. Correct. Nor do we even have specific allegations of incompetence, just a blanket assertion that the record reveals no tactical decision. Moreover, that assertion is belied by the California State court's reasoned opinion in the direct appeal where it proffered several legitimate tactical reasons. Well, it offered reasons, but we don't have anything in the record about what the attorney was saying. And the only reason I'm asking is that he hasn't been given an evidentiary hearing at any level. Is that true? That is correct. Although he was given a trial, and during that trial he could have made the basis for other claims. No, I mean on the ineffective assistance claim, which would not be part of his proper sittings. Correct. But the only reason that he would need an evidentiary hearing at this point is to go on a fishing expedition and try to find out, well, you know, maybe counsel had tactical reasons, maybe he didn't. If the district court is obligated or even should, not just an obligation, but as a matter of discretionary choice, if it should grant an evidentiary hearing, then that would open the door to evidentiary hearings in all kinds of cases where the appellant or Petitioner makes some blanket assertion and then goes on a fishing expedition. Well, I guess all of this is predicate, by the way. Let me give you my final thought on this and see what you think. I mean, it seems to me the only issue in front of us is prejudice. That was the basis upon which Judge Henderson resolved this case, correct? Correct. And if he's wrong on that, we need to remake it, right? No. You can still – you still owe deference to the State court's reasoned opinion on whether or not there was error. And in many of the cases, in fact, in most of the alleged claims of misconduct, the State court found that there was no ineffective decision. Right. But we don't have any habeas decisions, so we don't – I mean, it's an odd situation. I realize that many of the issues were resolved on direct appeal, but –  Yeah. So why don't you talk about prejudice? All right. Well, contrary to what Appellant has argued here, it's rather common for trial cases to be resolved on the basis of one eyewitness's testimony. Here we had L.R.'s initial statement to the police saying that she had seen Appellant in the car shooting at them both times. That evidence, while – that evidence was substantial. Now, she did recant, but there was also substantial evidence that she was doing so out of fear of retribution. Similarly, Holloway, another one of the victims in the car, testified extensively about what it means to be a snitch and that he would never snitch. The jury could have inferred from that discussion that he was declining to identify the perpetrator, whether or not it was Appellant, similarly out of a fear of retribution. Here, having that – but here, having alone L.R.'s eyewitness identification, that's more than sufficient. Moreover, considering the fact that the alleged errors were predominantly tangential to the issue of guilt, there was no prejudice here. The district court, as the state court found – correctly found that there was no prejudice from any of these errors, assuming that there were errors on counsel's part. Any further questions from the panel? Yeah. I was looking, trying to find out when the last opinion of the California appellate system was. That's the one we're supposed to review. But you say it was just a summary disposition on the California court of appeal decision on the habeas coming from the trial court. I believe that the habeas petition was denied on the same day as the opinion was issued in the direct appeal. Well, I did get the – I think it's the direct appeal. First appellate division, division one, filed September 20, 2006. And it looks very much like an appellate decision from the actual trial, rather than from a habeas petition. Correct. So what happened after 2006, September 2006? I assume, if I'm correct in designating this as an appeal of the case itself, it probably went to the Supreme Court and they denied. And then they started in with a habeas, and there must have been a habeas opinion, and there must have been, I assume, a court of appeals something. And you say the court of – I mean, appeal, not appeals. I assume from what you said, the court of appeal just gave a summary disposition and didn't give any direction of how they came to their conclusions. On the habeas petition, yes. So is the last opinion the trial court opinion on habeas, California trial court opinion on habeas? One second. I don't think there is one. I'm sorry. Trial court? Not that I'm aware of. I mean, if I understand this all correctly, here's what we have. We have a trial and we have a direct appeal. He files a habeas somewhere around that time. Concurrently, I believe. And the court of appeal denies the habeas and the direct appeal on the same day. True? Yes. Okay. And then the only thing that we have after that is postcard denial of the habeas by the California Supreme Court? The postcard denial from the California court of appeal was issued the same day as its opinion in the direct appeal. Right. And he only appealed. Which was appealed? To the Supreme Court? Yes. Only the direct appeal. Yes. Okay. So we don't have any California Supreme Court opinion on the habeas. Correct. Okay. And so the direct appeal and the habeas were done the same day? Yes. Well, that's that system they have where you can go both in tandem. Correct. It's quite typical for them to file a habeas concurrently with the direct appeal. Yes. Yes. Okay. Thank you. Okay. Let's go to further questions. Thank you. Mr. McCurley, I have a question regarding your confrontation clause claim. Sure. I have a question. Sergeant Cronin was the source of all the IDs of the petitioner's JROC, wasn't he? Sergeant Cronin, yes. Yes. So couldn't it have been a tactical defense decision not to object when Cronin testified that Ms. Robinson identified the petitioner? I don't believe that it would have been a tactical decision, you know, based on, and actually I think the court of appeal made that same argument. But in this case, you know, from my point of view where the evidence is so weak, you know, if you just have that one identification and you have the problems with that identification, I don't see that it could be a tactical decision to have a second, you know, identification come in. I just don't see that there could be much advantage to that. What do you mean when you say a problem? Problem with the first identification? Uh-huh. Well, if you read through the transcripts, and I think this was another problem with when she recanted, defense attorney didn't get the full opportunity to attack her first identification. In that statement, she says that she only knew that the individual she identified as a petitioner was petitioner because her uncle told her that. And she had never seen petitioner before that night. She saw him a couple days afterwards, supposedly, but she had never seen him before. One o'clock in the morning on all these drugs and alcohol, there's, you know, a lot there to attack that identification, I think. And I can clarify some of the issues you were talking about before. The petition for review included the issues from both the direct appeal and the habeas. So the petition for review that went to the California Supreme Court was denied. I see. But you didn't or whoever his counsel was at the time didn't request an evidentiary hearing on the habeas petition in state court, correct? I'm not positive on that one, but I believe they did. Do you think they asked for an evidentiary hearing? I think so. Before the California Court of Appeal? I believe that that's what they asked for in the remedy, is to send it back for an evidentiary hearing. Okay. Anything further to add? No, Your Honor. Any further questions? All right. The case just heard will be submitted for decision. Thank you both for your arguments. Thank you.
judges: Mills, Wallace, Thomas